## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: _____

IRON WORKERS DISTRICT COUNCIL OF TENNESSEE VALLEY & VICINITY PENSION PLAN, Individually and on Behalf of All Others Similarly Situated,

    Plaintiff,

v.

QWEST COMMUNICATIONS INTERNATIONAL, INC., a Delaware corporation,
CENTURYTEL, INC.,
SB44 ACQUISITION COMPANY,
EDWARD A. MUELLER,
JOSEPH J. EUTENEUER,
CHRISTOPHER K. ANCELL,
CHARLES L. BIGGS,
K. DANE BROOKSHER,
PETER S. HELLMAN,
R. DAVID HOOVER,
PATRICK J. MARTIN,
CAROLINE MATTHEWS,
WAYNE W. MURDY,
JAN L. MURLEY,
MICHAEL J. ROBERTS,
JAMES A. UNRUH and
ANTHONY WELTERS,

    Defendants.

---

**CLASS ACTION COMPLAINT**

---

Plaintiff alleges upon knowledge as to its own acts and upon information and belief as to all other matters, as follows:

## SUMMARY OF THE ACTION

1. Plaintiff brings this shareholder class action both for itself and on behalf of all similarly situated holders of common stock of Qwest Communications International Inc. ("Qwest" or the "Company") against Qwest, the directors and certain officers of Qwest, CenturyTel, Inc. ("CenturyTel") and SB44 Acquisition Company ("SB44"). This matter arises out of defendants' agreement to sell Qwest to CenturyTel via an unfair process for unfair consideration (the "Proposed Transaction"). In pursuing the Proposed Transaction, each of the defendants has violated applicable law by directly breaching and/or aiding breaches of fiduciary duties of loyalty and due care owed to plaintiff and the proposed class.

2. Under the terms of the Proposed Transaction, each Qwest shareholder is to receive 0.1664 CenturyTel share for each Qwest share they own, for an implied value of $6.02 per Qwest share (the "Proposed Consideration"). The Proposed Consideration has a total value of $10.6 billion, representing a premium of just 15% to the trading price of Qwest stock prior to the announcement of the Proposed Transaction.

3. The premium being offered as part of the Proposed Consideration does not reflect all of Qwest's valuable assets. As part of the Proposed Transaction, CenturyTel will acquire Qwest's net operating losses ("NOL"). The Company has $5.8 billion worth of NOL. CenturyTel expects to be able to fully use these NOL for substantial tax savings. According to Glenn Post, Chief Executive Officer ("CEO") of CenturyTel, Qwest's NOL will give CenturyTel tax savings of approximately $1.7 billion discounted to net present value.

- 1 -

4. In addition, the Company is currently strengthening its balance sheet by reducing its leverage. Qwest's earnings and free cash flow results for the previous year have also been near the top of its expectations. The market has begun to take notice of the Company's efforts, as Qwest's stock price has increased 25% so far this year. Until it was burdened by the prospects of the Proposed Transaction, Qwest's stock price was poised to increase even further.

5. Indeed, during the analyst conference call following the Proposed Transaction announcement, analysts questioned the timing of the Proposed Transaction. One analyst stated "[i]s there any reason why the deal has to happen now? I mean I think myself and some investors are a little surprised it happened as soon as it has when it looks like Qwest really has a lot of runway at this point." Another analyst asked whether the impetus for engaging in the Proposed Transaction now for CenturyTel was Qwest's increasing market capitalization. In particular, the analyst stated, "Qwest has obviously had a strong move recently. So I'm wondering did you just perceive here that there was risk of the Company getting away from you from a valuation perspective."

6. That the Company's officers and directors are selling the Company at an unfair price is further supported by the financial metrics of the post-acquisition Company. If allowed to close, the Proposed Transaction will be accretive to CenturyTel's earnings immediately. Further, CenturyTel already identified synergies worth $575 million.

7. The Individual Defendants failure to obtain a collar to combat the inherent risk in a cash and stock transaction like the Proposed Transaction must be remedied. While Qwest's restructuring has benefited the Company's share price, CenturyTel's stock price has fallen 5% so far this year. Thus, the Individual Defendants should have obtained a collar to combat any fluctuation

in the price of CenturyTel and Qwest's stock that would negatively affect the Company's shareholders.

8. In addition, the Company's fiduciaries will gain benefits not shared by the rest of Qwest's shareholders. Pursuant to the Agreement and Plan of Merger dated April 21, 2010 (the "A&PM"), the Company's current CEO, Edward A. Mueller ("Mueller") and three other current unnamed directors will receive positions on CenturyTel's board of directors.

9. In order to secure the benefits named above, the Board of Directors of Qwest (the "Board") agreed to deal protection devices that will unreasonably deter other bidders. These preclusive terms include a termination fee of $350 million and a "no-shop" clause.

10. In short, the Proposed Transaction is designed to unlawfully divest and dilute Qwest's public shareholders of the Company's valuable assets for grossly inadequate consideration. Defendants know that these assets will continue to produce substantial revenue.

11. Thus, the Proposed Transaction is the product of a flawed process that is designed to ensure the sale of Qwest to CenturyTel on terms preferential to certain Qwest directors, officers, and CenturyTel but detrimental to plaintiff and the other public stockholders of Qwest. Plaintiff seeks to enjoin the Proposed Transaction, or alternatively, in the event the Proposed Transaction is consummated, plaintiff seeks to recover damages caused by the breaches of fiduciary duties owed to the Company's shareholders.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332 in that plaintiff and defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs. This Court also has jurisdiction pursuant to 15

U.S.C. §78bb(f)(3)(A)(i) because it is a class action based upon the statutory or common law of Delaware, Qwest's state of incorporation, and thus may be maintained in Federal court. Each of the trustees of Iron Workers District Council of Tennessee Valley & Vicinity Pension Plan is either a citizen of Tennessee or Alabama. None of the defendants is a citizen of Tennessee or Alabama. This Court has supplemental jurisdiction under 28 U.S.C. §1367 over all claims that are so related to claims in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

13. Venue is proper in this District pursuant to 28 U.S.C. §1391 because: (i) Qwest maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to Qwest's shareholders, occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

14. Plaintiff Iron Workers District Council of Tennessee Valley & Vicinity Pension Plan is, and has been at all times relevant hereto, a Qwest shareholder. Each of the trustees of Iron Workers District Council of Tennessee Valley & Vicinity Pension Plan is either a citizen of Tennessee or Alabama.

15.     Qwest is a Delaware corporation, headquartered at 1801 California Street, Denver, Colorado 80202. Qwest is and at all times relevant hereto was listed and traded on the New York Stock Exchange under the symbol "Q." The Company specializes in the service of a range of telecommunications services throughout the United States.

16.     Defendant CenturyTel is a telecommunications company located in Monroe, Louisiana. Defendant CenturyTel is a publicly traded company with securities trading on the New York Stock Exchange under the symbol "CTL."

17.     Defendant SB44 is a Delaware corporation and wholly owned subsidiary of CenturyTel. On the closing date of the merger, SB44 will be merged with and into Qwest and shall cease to exist as a separate corporation.

18.     Defendant Mueller is Qwest's Chairman and CEO and has been since August 2007. Under the A&PM, Mueller will continue serving as a director on the board of the combined company. Defendant Mueller is a citizen of Colorado.

19.     Defendant Joseph J. Euteneuer ("Euteneuer") is Qwest's Executive Vice President and Chief Financial Officer and has been since September 2008. Defendant Euteneuer is a citizen of Colorado.

20.     Defendant Christopher K. Ancell ("Ancell") is Qwest's Executive Vice President, Business Markets Group and has been since August 2009. Ancell was also Qwest's Vice President of Sales, Western Region, for the Business Markets Group from 2004 to August 2009 and Vice President of Sales Support for the Business Markets Group from 2002 to 2004. Ancell joined Qwest in 2000 and has held several other management positions, including Vice President of Hosting Sales and Vice President in the product organization. According to the joint press release issued on April

22, 2010, Ancell will remain employed with the combined company as President of the Business Markets Group. Defendant Ancell is a citizen of Colorado.

21.  Defendant Charles L. Biggs ("Biggs") is a Qwest director and has been since 2004. Defendant Biggs is a citizen of Connecticut.

22.  Defendant K. Dane Brooksher ("Brooksher") is a Qwest director and has been since 2004. Defendant Brooksher is a citizen of Missouri.

23.  Defendant Peter S. Hellman ("Hellman") is a Qwest director and has been since 2000. Defendant Hellman is a citizen of Ohio.

24.  Defendant R. David Hoover ("Hoover") is a Qwest director and has been since 2005. Defendant Hoover is a citizen of Colorado.

25.  Defendant Patrick J. Martin ("Martin") is a Qwest director and has been since 2005. Defendant Martin is a citizen of Colorado.

26.  Defendant Caroline Matthews ("Matthews") is a Qwest director and has been since 2005. Defendant Matthews is a citizen of Colorado.

27.  Defendant Wayne W. Murdy ("Murdy") is a Qwest director and has been since 2005. Defendant Murdy is a citizen of Colorado.

28.  Defendant Jan L. Murley ("Murley") is a Qwest director and has been since 2007. Defendant Murley is a citizen of Ohio.

29.  Defendant Michael J. Roberts ("Roberts") is a Qwest director and has been since 2009. Defendant Roberts is a citizen of Illinois.

30.  Defendant James A. Unruh ("Unruh") is a Qwest director and has been since 2005. Defendant Unruh is a citizen of Arizona.

31.  Defendant Anthony Welters ("Welters") is a Qwest director and has been since 2006. Defendant Welters is a citizen of Virginia.

32.  The defendants identified in ¶¶18-31 are at times collectively referred to as the "Individual Defendants."

33.  The Individual Defendants, as officers and directors of the Company, owe fiduciary duties to the public shareholders. As alleged herein, they have breached their fiduciary duties by failing to maximize shareholder value in a proposed sale of the Company.

## CLASS ACTION ALLEGATIONS

34.  Plaintiff brings this action individually and as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of all holders of Qwest stock who are being and will be harmed by defendants' actions described herein (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendants.

35.  This action is properly maintainable as a class action.

36.  The Class is so numerous that joinder of all members is impracticable. Qwest has outstanding approximately 1.73 billion shares owned by thousands of shareholders.

37.  There are questions of law and fact which are common to the Class, including, inter alia, the following:

(a)  whether the Individual Defendants have breached their fiduciary duties of undivided loyalty and due care with respect to plaintiff and the other members of the Class in connection with the Proposed Transaction;

(b)  whether the Individual Defendants have erected barriers designed to deter interested bidders, other than CenturyTel;

(c)     whether the Individual Defendants have disclosed to the Company's public shareholders all material information necessary for said shareholders to make a decision as to whether to vote their shares in support of the Proposed Transaction;

(d)     whether Qwest, CenturyTel, and SB44 have aided and abetted the Individual Defendants in breaching their duties; and

(e)     whether plaintiff and the other members of the Class will be irreparably harmed if the transactions complained of herein are consummated.

38.     Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff does not have any interests adverse to the Class.

39.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

40.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for the party opposing the Class.

41.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

**FACTUAL ALLEGATIONS**

42.     Despite recent difficulties caused by the global recession, the short-term and long-term prospects for Qwest's services and finances are favorable. Qwest has stated as much in recent press releases. On October 28, 2009, Qwest issued a press release reporting the Company's financial

results for the third quarter 2009. In the press release, the Company reported net income of $136 million, and earnings per share of $0.08, equal to the previous year. Defendant Mueller was quoted in the press release as saying:

> "Our focus on perfecting the customer experience while maintaining strong financial discipline again enabled us to deliver solid results in the quarter.... The ability of the Qwest team to steer through difficult market conditions has been exemplary. This is evident in key measures of our performance including strategic revenue growth, reduced operating expenses, stable EBITDA, strong free cash flow and an improving leverage ratio. As a result of our stronger-than-expected performance to date, *we are raising our full year 2009 free cash flow outlook*. We are optimistic about our prospects as the economy begins to improve in the quarters ahead."

43.     On January 6, 2010, Qwest filed a Form 8-K with the U.S. Securities and Exchange Commission announcing that the Company expected its full-year EBITDA will be near the upper end of its guidance of $4.25 billion to $4.4 billion, and that its full-year adjusted free cash flow will exceed the upper end of its guidance of $1.6 billion to $1.7 billion.

44.     On February 16, 2010, Qwest issued a press release announcing the Company's financial results for the fourth quarter and full year 2009, which included net income in the fourth quarter of $108 million, and an increase in full year 2009 earnings per share to $0.38. The financial results were described in the press release as "solid growth in business and consumer data services, [and Qwest] continued to produce strong cash flows and made significant progress on key initiatives." In the same press release, defendant Mueller was quoted as saying:

> "In the quarter, we continued to create innovative approaches to drive efficiency and perfect the customer experience.... Throughout 2009, the Qwest team stood up to the challenges of a tough economy and highly competitive markets to deliver value for our shareholders. In particular, we did an excellent job of generating cash flows and strengthening the balance sheet. In 2010, our goal is to continue to excel in these areas while adding improved revenue performance to our list of achievements. *We continue to be optimistic about our prospects in the coming year*."

45.     The positive financial results of the Company, as reported by Qwest in recent press releases and SEC filings, make the decision to sell the Company to CenturyTel for the Proposed Consideration all the more shocking.

46.     On April 22, 2010, the Company announced the Proposed Transaction in a press release. The press release stated in pertinent part:

> CenturyLink (CenturyTel, Inc., NYSE: CTL) and Qwest Communications (NYSE:Q) announced today that their boards of directors have approved a definitive agreement under which CenturyLink will acquire Qwest in a tax-free, stock-for-stock transaction. Under the terms of the agreement, Qwest shareholders will receive 0.1664 CenturyLink shares for each share of Qwest common stock they own at closing. Upon closing of the transaction, CenturyLink shareholders are expected to own approximately 50.5 percent and Qwest shareholders are expected to own approximately 49.5 percent of the combined company.
>
> Based on the closing stock price of CenturyLink on April 21, 2010, the per share consideration to be received by Qwest shareholders would be equivalent to $6.02 of CenturyLink stock, which represents a premium to Qwest shareholders of approximately 15 percent over Qwest's closing stock price on April 21, 2010. Based on the closing stock price of CenturyLink on April 21, 2010, the transaction reflects an enterprise value of Qwest of approximately $22.4 billion, including the assumption of $11.8 billion of Qwest net debt outstanding as of December 31, 2009.
>
> The parties expect the transaction to be accretive to CenturyLink's free cash flow per share, excluding integration costs, immediately following the close of the transaction. Leveraging CenturyLink's proven integration experience, the transaction is expected to generate annual operating and capital synergies of approximately $625 million when fully recognized over a three- to five-year period following the close of the transaction.

47.     The Proposed Transaction undervalues Qwest's immediate and longterm prospects as a provider of landline DSL internet services to rural communities without broadband cable internet access or fiber-optic transmission lines, and the value of those prospects to CenturyTel. Notably, CenturyTel has stated that it expects to reap $575 million in annual cost synergies, and expects to generate even greater revenue synergies as it moves quickly to update Qwest's landlines to handle

DSL internet. In addition, Qwest has $5.8 billion in NOL's with a net present value of at least $1.7 billion. As currently constituted, the Proposed Transaction is not priced to compensate Qwest shareholders for these synergies or Qwest's NOL's.

48. The announcement of the Proposed Transaction also revealed that four of Qwest's current directors, including defendant Mueller, would be appointed to the board of directors of CenturyTel, creating a clear conflict of interest for those directors who have a duty to act in the best interests of the Company's shareholders, not themselves.

49. Furthermore, and in violation of the duty of the Individual Defendants to maximize shareholder value, the A&PM contains terms designed to favor the Proposed Transaction and deter alternative bids. The improper terms of the A&PM include: (i) a no-solicitation clause, (ii) a clause requiring that Qwest inform CenturyTel of any alternative bids for the Company, including all material terms and conditions, and (iii) an improper $350 million termination fee in the event that a superior bid is accepted by the Company.

50. Under Section 5.03 of the A&PM, Qwest is subject to a no-solicitation clause that prohibits the Company from seeking a superior offer for its shareholders. Section 5.03 states, in part:

> (a) Qwest shall not, nor shall it authorize or permit any of its Affiliates or any of its and their respective Representatives to, (i) directly or indirectly solicit or initiate, or knowingly encourage, induce or facilitate any Qwest Takeover Proposal or any inquiry or proposal that may reasonably be expected to lead to a Qwest Takeover Proposal or (ii) directly or indirectly participate in any discussions or negotiations with any Person regarding, or furnish to any Person any information with respect to, or cooperate in any way with any Person (whether or not a Person making a Qwest Takeover Proposal) with respect to any Qwest Takeover Proposal or any inquiry or proposal that may reasonably be expected to lead to a Qwest Takeover Proposal. Qwest shall, and shall cause its Affiliates and its and their respective Representatives to, immediately cease and cause to be terminated all existing discussions or negotiations with any Person conducted heretofore with respect to any Qwest

Takeover Proposal, or any inquiry or proposal that may reasonably be expected to lead to a Qwest Takeover Proposal, request the prompt return or destruction of all confidential information previously furnished and immediately terminate all physical and electronic data room access previously granted to any such Person or its Representatives.

51. Furthermore, Qwest is subject to another lock up provision in Section 6.06 of the A&PM. Section 6.06 states that Qwest is subject to a $350 million termination fee that represents approximately 3.3% of the entire deal value, or more than $0.20 per share to be paid by the Company if it accepts a superior proposal. Additionally, any further transaction sought by the Company if the Proposed Transaction fails means the Company's cash on hand is diminished by $350 million. This provision is unfair to the Company's shareholders and contrary to their interests because it deters and prevents the submission of higher proposals.

52. Unless enjoined by this Court, the defendants will continue to breach and/or aid the breaches of fiduciary duties owed to plaintiff and the Class, and may consummate the Proposed Transaction which will deprive Class members of their fair share of Qwest's valuable assets and businesses, to the irreparable harm of the Class.

53. Plaintiff and the other members of the Class have no adequate remedy at law.

## COUNT I

### Claim for Breaches of Fiduciary Duties
### Against the Individual Defendants

54. Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

55. The Individual Defendants have violated the fiduciary duties of care, loyalty, good faith, and independence owed to the public shareholders of Qwest and have acted to put their personal interests ahead of the interests of Qwest's shareholders.

56. By the acts, transactions, and courses of conduct alleged herein, defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive plaintiff and other members of the Class of the true value inherent in and arising from Qwest.

57. The Individual Defendants have violated their fiduciary duties by entering Qwest into the Proposed Transaction without regard to the effect of the Proposed Transaction on Qwest's shareholders.

58. As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, and independence owed to the shareholders of Qwest because, among other reasons:

    (a) they failed to take steps to maximize the value of Qwest to its public shareholders;

    (b) they failed to properly value Qwest and its various assets and operations; and

    (c) they ignored or did not protect against the numerous conflicts of interest resulting from the Individual Defendants own interrelationships or connection with the Proposed Transaction.

59. Because the Individual Defendants dominate and control the business and corporate affairs of Qwest, have access to private corporate information concerning Qwest's assets, business and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Qwest which makes it inherently unfair for them to pursue and recommend any proposed transaction wherein they will reap disproportionate benefits to the exclusion of maximizing shareholder value.

60. By reason of the foregoing acts, practices, and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward plaintiff and the other members of the Class.

61. The Individual Defendants are engaging in self-dealing, are not acting in good faith toward plaintiff and the other members of the Class, and have breached and are breaching their fiduciary duties to the members of the Class.

62. As a result of the Individual Defendants' unlawful actions, plaintiff and the other members of the Class will be irreparably harmed in that they will not receive their fair portion of the value of Qwest's assets and operations. Unless the Proposed Transaction is enjoined by the Court, the Individual Defendants will continue to breach their fiduciary duties owed to plaintiff and the members of the Class, will not engage in arm's-length negotiations on the Proposed Transaction terms, and may consummate the Proposed Transaction, all to the irreparable harm of the members of the Class.

63. Plaintiff and the members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can plaintiff and the Class be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

## COUNT II

### Against Qwest for
### Aiding and Abetting Breaches of Fiduciary Duties

64. Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

65. The Individual Defendants owed to plaintiff and the members of the Class certain fiduciary duties as fully set out herein.

- 14 -

66. By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to plaintiff and the members of the Class.

67. Qwest colluded in or aided and abetted the Individual Defendants' breaches of fiduciary duties, and was an active and knowing participant in the Individual Defendants' breaches of fiduciary duties owed to plaintiff and the members of the Class.

68. Plaintiff and the members of the Class shall be irreparably injured as a direct and proximate result of the aforementioned acts.

### COUNT III

### Against CenturyTel and SB44 for Aiding and Abetting Breaches of Fiduciary Duties

69. Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

70. The Individual Defendants owed to plaintiff and the members of the Class certain fiduciary duties as fully set out herein.

71. By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to plaintiff and the members of the Class.

72. CenturyTel and SB44 colluded in or aided and abetted the Individual Defendants breaches of fiduciary duties, and was an active and knowing participant in the Individual Defendants' breaches of fiduciary duties owed to plaintiff and the members of the Class.

73. CenturyTel and SB44 participated in the breach of the fiduciary duties by the Individual Defendants for the purpose of advancing its own interests. CenturyTel and SB44 obtained and will obtain both direct and indirect benefits from colluding in or aiding and abetting the Individual Defendants breaches. CenturyTel and SB44 will benefit, *inter alia*, from the acquisition

of the Company at an inadequate and unfair consideration if the Proposed Transaction is consummated.

74. Plaintiff and the members of the Class shall be irreparably injured as a direct and proximate result of the aforementioned acts.

## PRAYERS FOR RELIEF

WHEREFORE, plaintiff demands relief, in plaintiff's favor and in favor of the Class and against defendants, as follows:

A. Declaring that this action is properly maintainable as a class action;

B. Declaring and decreeing that the A&PM was entered into in breach of the fiduciary duties of Individual Defendants and is therefore unlawful and unenforceable;

C. Enjoining defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a procedure or process reasonably designed to enter into a merger agreement providing the best possible value for Qwest's public shareholders;

D. Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Qwest and obtain a transaction which is in the best interests of Qwest's shareholders;

E. Rescinding, to the extent already implemented the A&PM;

F. Imposition of a constructive trust, in favor of plaintiff and members of the Class, upon any benefits improperly received by defendants as a result of their wrongful conduct;

G. Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

H.  Granting such other and further equitable relief as this Court may deem just and proper.

Dated: April 29, 2010

                                           s/ Kip S. Shuman
Kip B. Shuman
Rusty E. Glenn
**THE SHUMAN LAW FIRM**
885 Arapahoe Avenue
Boulder, CO 80302
Telephone: (303) 861-3003
Facsimile: (303) 484-4886

Brian J. Robbins
S. Benjamin Rozwood
Rebecca A. Peterson
Arshan Amiri
Jay N. Razzouk
**ROBBINS UMEDA LLP**
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

Attorneys for Plaintiff